710 So.2d 573 (1998)
HOSPITAL CORPORATION OF AMERICA, and Tamarac Acquisition Corporation, Appellants/ Cross-Appellees,
v.
FLORIDA MEDICAL CENTER, INC., Appellee/ Cross-Appellant.
Nos. 96-3096, 96-4151 and 97-0851.
District Court of Appeal of Florida, Fourth District.
February 4, 1998.
Rehearing, Rehearing and Certification Denied March 30, 1998.
Alexander D. del Russo of Levy, Kneen, Mariani, Curtin, Wiener, Kornfeld & del Russo, P.A., West Palm Beach, for Appellants/Cross-Appellees.
Parker D. Thomson and Brian A. Hart of Thomson, Muraro, Razook & Hart, P.A., Miami, and Jack Stein and Caryn Carvo of Stein, Rosenberg & Winikoff, P.A., Fort Lauderdale, for Appellee/Cross-Appellant.
Rehearing, Rehearing En Banc and Certification Denied March 30, 1998.
PER CURIAM.
We reverse a judgment founded on a verdict in favor of Florida Medical Center (FMC) against Hospital Corporation of America (HCA) and its affiliate, Tamarac Acquisitions. The trial court erred in failing to direct a verdict for the defense on the sole claims of breach of an implied duty of good faith and Appellants' alleged failure to follow the law.
*574 FMC operated a medical complex, which had initially included a short term inpatient psychiatric facility. The facility held a Certificate of Need (CON) issued by HRS. At that time, HRS classified inpatient psychiatric facilities as either long term or short term, and issued separate CONs for the different categories. A hospital could not be built and could not operate without a CON, and a facility licensed to provide long term care was not allowed to provide any services beyond those specified in its license. § 395.033(5), Fla. Stat. (1987). In 1984, FMC acquired a CON from HRS to construct a 60 bed long term facility separate from their short term facility. FMC decided not to operate the new facility itself. Because CONs could not be sold for a profit, FMC negotiated a deal with HCA in which it would build the hospital and sell it to HCA along with the CON. FMC and HCA entered into a series of agreements under which FMC leased property on the grounds of an existing HCA hospital within the service area of FMC's short term care CON. FMC borrowed funds from HCA to build the hospital; hired an HCA affiliate to develop the hospital; retained an HCA affiliate to manage the hospital; and gave Tamarac Acquisition, a subsidiary of HCA, an option to purchase the hospital.
The hospital was built, opened, and sold to Tamarac in 1989. FMC's license to operate it was transferred to HCA, and HRS issued a new license to Tamarac for its operation of a long term psychiatric facility. At the time of the closing, the parties executed a termination of contracts document, a mutual waiver, and a release of all claims. The only agreement which survived the closing was an option agreement, which called for Tamarac to exercise an option within 30 days after the hospital was opened and called for the termination of all other agreements when the sale was closed. It also contained two sections which were titled "Covenant Not To Compete."
After the sale, FMC filed a written complaint with HRS that the hospital was violating its long term license by not meeting the 90-day minimum stay requirement. HRS issued a report which concluded that HCA was in violation of its license. However, in 1990, HRS abolished the distinction between long and short term categories, and the actions against HCA were dropped.
FMC alleged that HCA breached the covenant not to compete by operating as a short term facility and by actively supporting the amendment to the HRS rule abolishing the difference between short and long term facilities. FMC asserted a claim for fraud in the inducement, which was dismissed by the trial court. FMC also claimed a breach of an implied duty of good faith and fair dealing under the option agreement due to HCA's operating the hospital in violation of its license and circumventing the non-compete clause in the option contract.
Before trial, however, the trial court ruled that the contract provision in which HCA agreed not to pursue licensing as a short term in-patient facility was void as an unlawful restraint of trade. That left FMC's agreement not to seek long term licensing as the only remaining contractual obligation arguably enforceable against HCA. Other than the covenant not to compete, no express terms in the contract addressed how HCA was to conduct its business after taking ownership. Having ruled that the HCA covenant not to compete was void, the trial court, nonetheless, allowed FMC to proceed to trial on its third amended complaint which included a count I, titled "Breach of Contractual Obligations." This count alleged that HCA's operation of the hospital as a short term facility breached two duties which were implied by law in the option agreement: (1) the implied duty of good faith and fair dealing, and (2) the implied duty to obey the law touching on the subject matter of the agreement
FMC does not dispute that absent the covenant not to compete, HCA had no express obligations to perform under the agreement. Rather, FMC argues that, by signing the option agreement, HCA is bound to subsequently comply with Florida's laws governing the licensing and operation of psychiatric hospitals and that HCA's failure to do so prior to the change in the law constituted a breach of the requirements implied in the option to purchase. However, there is no *575 recognized independent cause of action for breach of a duty to obey laws other than as may be included in the terms of a contract. Wilcox v. Atkins, 213 So.2d 879 (Fla. 2d DCA 1968). Other than to resolve ambiguity or to assure that a change in the law did not make it impossible for the parties to reap the anticipated benefits of their bargain, courts do not utilize this principle to alter or add to negotiated obligations defined in contracts. The exception is where the law renders the contract illegal.
With respect to Appellee's claimed breach of an implied duty of good faith, a duty of good faith must relate to the performance of an express term of the contract and is not an abstract and independent term of a contract which may be asserted as a source of breach when all other terms have been performed pursuant to the contract requirements. See Bernstein v. True, 636 So.2d 1364 (Fla. 4th DCA 1994) (covenant of good faith not actionable where contract not enforceable); Hall v. Burger King Corp., 912 F.Supp. 1509, 1544 (S.D.Fla.1995); Burger King Corp. v. Weaver, 798 F.Supp. 684, 688 (S.D.Fla.1992) (implied covenant of good faith not actionable without breach of contractual provision). But see Scheck v. Burger King Corp., 798 F.Supp. 692 (S.D.Fla.1992); Scheck v. Burger King Corp., 756 F.Supp. 543 (S.D.Fla.1991) (duty of good faith and fair dealing found in franchise agreement where contractual relationship was ongoing). Before the duty of good faith attached, FMC was required to establish that there was a term of the contract which HCA was obligated to perform. Allowing FMC to pursue the claim for breach of duty of good faith where no enforceable executory contractual obligation on HCA's part remained would add an obligation to the contract which was not negotiated by the parties and not in the contract.
The other issues raised by Appellants are moot. As to the several arguments raised on cross-appeal, we affirm. Flatley v. Forbes, 483 So.2d 483, 484-85 (Fla. 2d DCA 1986); Weintraub v. Roth, 617 So.2d 1158 (Fla. 4th DCA 1993); Periera v. Florida Power & Light Co., 680 So.2d 617 (Fla. 4th DCA 1996); Fleming v. Peoples First Fin. Sav. and Loan Ass'n, 667 So.2d 273 (Fla. 1st DCA 1995). Therefore, we remand for entry of judgment for Appellants, HCA and Tamarac.
STONE, C.J., GROSS, J., and DAKAN, STEPHEN, Associate Judge, concur.