900 So.2d 697 (2005)
BEACH STREET BIKES, INC., d/b/a Pompano Pats, Appellant,
v.
BOURGETT'S BIKE WORKS, INC., Appellee.
No. 5D04-1434.
District Court of Appeal of Florida, Fifth District.
April 22, 2005.
*698 Martin A. Pedata of Martin Pedata, P.A., Deland, for Appellant.
Armistead W. Ellis, Jr., of Armistead W. Ellis, Jr., P.A., Daytona Beach, for Appellee.
PLEUS, J.
Beach Street Bikes d/b/a Pompano Pats ("Pompano Pats") appeals from a final judgment in favor of Bourgett's Bike Works ("Bourgett") after a non-jury trial in this breach of contract action. We find competent, substantial evidence in the record to support the trial court's findings that Bourgett did not breach the contract or violate Chapter 320, Florida Statutes. We therefore affirm that portion of the final judgment without further discussion. However, we reverse that portion of the judgment finding that Pompano Pats breached the contract and write further to explain.
Bourgett is a motorcycle manufacturer. Pompano Pats is a motorcycle dealer. They entered into a contract and addendum on June 29, 2001. The contract was drafted by Bourgett and the addendum was drafted by Pompano Pats. In the contract, Bourgett granted Pompano Pats the right to sell its motorcycles within a 50 mile radius of Daytona Beach. Bourgett also agreed not to operate or license any other business using the licensed name or products within this area "so long as Dealer has fulfilled all ordering requirements as stated in this agreement." The contract required Pompano Pats to order the following:
3.1.1 A minimum order of Two complete motorcycles for display in each location's showroom must be placed at signing of Dealer Agreement. The orders should be for immediate delivery based on current production schedule lead times.
3.1.2 Dealer agrees to purchase a minimum of Twenty-Five bikes for the year 2001, including the initial orders. These orders may be for Dealer stock or Retail customers.
The term of the contract was for one year. The addendum changed section 3.1.2 as follows:
3.1.2 Dealer does not agree to purchase the minimum requirement of 25 bikes during the year 2001. Dealer requests [Bourgett] to acknowledge only 7 months remain in the calendar year *699 2001. Dealer agrees to make the 25 bikes a personal sales goal, but these expectations might be unrealistic.
In January 2002, Pompano Pats sued Bourgett alleging various breaches of contract and violations of Chapter 320. Bourgett filed a counterclaim for breach of contract alleging that Pompano Pats failed to meet the minimum ordering requirements.
At the non-jury trial, the evidence established that Pompano Pats purchased three motorcycles from Bourgett. Pompano Pats ordered at least two others but failed to put deposits down or otherwise pay for them. Bourgett sold these two motorcycles to other dealers. During closing arguments, Bourgett's attorney asked the court to award damages of $228,540.40, which represented the minimum profit Bourgett would have realized if they had sold Pompano Pats the remaining 20 bikes under the contract. At that point, the court asked Bourgett's attorney why the 25 bike requirement was not eliminated by the addendum. The attorney responded:
That's correct to the extent that it's ambiguous, the ambiguity should be construed against the drafter. . . . If the suggestion is that this allows them to get out of the dealership agreement, then if there is no obligation to buy any motorcycles at all, the agreement as a whole has no meaning at all because it gives them an exclusive territory without any obligation to buy motorcycles, which effectively kicks my client out of his market entirely for anybody. And that construction wouldn't make any sense. So I think if we construe that ambiguity against the drafter, there is still an obligation to buy bikes from my client.
The trial court apparently adopted Bourgett's position, entering a final judgment for Bourgett and finding as follows:
The Court finds that Pompano Pat's [sic] did breach its written contract with Bourgett. Under the written contract Bourgett had a reasonable expectation of selling Pompano Pat's a total of 15 custom motorcycles. Pompano Pat's did buy 3 custom motorcycles pursuant to the contract. Bourgett manufactured 2 other custom motorcycles to Pompano Pat's order that Pompano Pat's did not pay for but Bourgett was able to sell those 2 custom motorcycles to other third parties and suffered no loss on account of Pompano Pat's not paying for those 2 custom motorcycles. Bourgett's offered proof that its profits for the least expensive motorcycles in its line amounted to $11,428.00 per motorcycle. Therefore Bourgett suffered foreseeable damages in the amount of $114,280.00 as a direct consequence of Pompano Pat's breach of contract.
A lower court's interpretation of a contract is subject to a de novo standard of review. Florida Recycling Services, Inc. v. Greater Orlando Auto Auction, Inc., 898 So.2d 129 (Fla. 5th DCA 2005). Pompano Pats argues that the trial court erred in finding that it breached the contract by failing to purchase 10 motorcycles. It argues that the addendum was clear and did not obligate it to purchase any bikes beyond the first two. Thus, the court lacked authority to rewrite the contract.
Bourgett argues Pompano Pats' interpretation of the contract would result in a lack of mutuality of obligation and lack of consideration. It claims the addendum terms "personal sales goal" are ambiguous and that such ambiguity should be resolved against Pompano Pats. It asserts that an implied covenant of good faith and fair dealing applies a gap filler, allowing *700 the trial court to impose "reasonable commercial expectations" on the contract.
Bourgett's argument fails for three reasons. First, the addendum language is not ambiguous. It states:
3.1.2 Dealer does not agree to purchase the minimum requirement of 25 bikes during the year 2001. Dealer requests BBW to acknowledge only 7 months remain in the calendar year 2001. Dealer agrees to make the 25 bikes a personal sales goal, but these expectations might be unrealistic.
When read as a whole, and in conjunction with the original section 3.1.2, it clearly states that Pompano Pats "does not agree to purchase the minimum requirement of 25 bikes during the year 2001" as required in the original contract. Although it goes on state that Pompano Pats "agrees to make the 25 bikes a personal sales goal," Pompano Pats never agreed to purchase a specific number of bikes beyond the two required in paragraph 3.1.1. of the contract. There was no meeting of the minds on purchasing a set number beyond the first two motorcycles. Pompano Pats purchased three bikes, thereby satisfying its obligations.
Second, the implied covenant of good faith cannot be used to vary the terms of an express contract. In Insurance Concepts and Design, Inc. v. Healthplan Services, Inc., 785 So.2d 1232, 1234 (Fla. 4th DCA 2001), the fourth district stated:
A duty of good faith must relate to the performance of an express term of the contract and is not an abstract and independent term of a contract which may be asserted as a source of breach when all other terms have been performed pursuant to the contract requirements. Hospital Corp. of America v. Florida Med. Ctr., Inc., 710 So.2d 573, 575 (Fla. 4th DCA 1998)(emphasis added). The duty of good faith does not attach until the Plaintiff can establish a term of the contract that HPS was obligated to perform. Id.; see also Johnson Enter. of Jacksonville, Inc. v. FPL Group, Inc., 162 F.3d 1290, 1314 (11th Cir. 1998)("[G]ood faith requirement does not exist `in the air'. Rather, it attaches only to the performance of a specific contractual obligation."). Allowing a claim for breach of the implied covenant of good faith and fair dealing "where no enforceable executory contractual obligation" remains would add an obligation to the contract that was not negotiated by the parties. Hospital Corp., 710 So.2d at 575.
Id. at 1235. Because there was no meeting of the minds on the number of bikes Pompano Pats was obligated to purchase beyond the initial two mentioned in paragraph 3.1.1., the trial court erred by invoking the implied covenant of good faith to impose upon Pompano Pats the obligation to purchase 15 bikes, which was never negotiated by the parties. Insurance Concepts.
Even if we were to find the addendum ambiguous, we could not use the implied covenant of good faith to rewrite into the contract an obligation to purchase 15 motorcycles. Insurance Concepts. Nor could we simply rely on the ambiguity to rewrite the contract and add meaning that is not present. See, e.g., Deni Associates of Florida, Inc. v. State Farm Fire & Cas. Ins. Co., 711 So.2d 1135 (Fla.1998). Nor can the trial court use parol evidence to rewrite the contract.
A further limitation on the receipt of parol evidence to explain ambiguous contractual language is that the ambiguity must be latent as opposed to patent. A patent ambiguity is one which appears on the face of a contract and arises from *701 the use of defective, obscure, or insensible language. Ace Elec. Supply Co. v. Terra Nova Elec., Inc., 288 So.2d 544 (Fla. 1st DCA 1973). Florida courts have consistently declined to allow the introduction of extrinsic evidence to construe such an ambiguity because to do so would allow a trial court to rewrite a contract with respect to a matter the parties clearly contemplated when they drew their agreement.
Emergency Associates of Tampa, P.A. v. Sassano, 664 So.2d 1000, 1002 (Fla. 2d DCA 1995). If there was any ambiguity in the contract, it was patent, not latent. Thus, the court could not rely on Bourgett's testimony that it reasonably expected to sell all 25 bikes to Pompano Pats to impose an obligation on Pompano Pats to purchase 15 bikes. The court improperly rewrote the contract, adding terms that were never agreed to by the parties.
Third, Bourgett's attempt to assert a mutuality of obligation argument lacks merit. It claims that "[i]f the trial court had adopted a construction of the contract suggested by Appellant that didn't require any exercise of a duty by the appellant, the contract would fail for lack of mutuality." This Court's position with regard to mutuality of obligation was noted in Avid Engineering, Inc. v. Orlando Marketplace Ltd., 809 So.2d 1 (Fla. 5th DCA 2002) as follows:
In Rohlfing v. Tomorrow Realty & Auction Co., 528 So.2d 463 (Fla. 5th DCA 1988), we . . . concluded that the defense of mutuality of obligation was nothing more than a "smoke screen." Additionally, we agreed with LaBonte Precision, Inc. v. LPI Industries Corporation, 507 So.2d 1202 (Fla. 4th DCA 1987), which held that:
[W]here there is no other consideration for a contract, mutual provisions must be binding on both parties, but where there is any other consideration for the contract, "mutuality of obligation" is not essential.

Id. at 1203 (citing Wright & Seaton, Inc. v. Prescott, 420 So.2d 623, 626 (Fla. 4th DCA 1982)).
Avid Engineering, 809 So.2d at 4. Clearly, the requirement imposed in paragraph 3.1.1. to purchase two motorcycles was sufficient consideration for the contract.
For these reasons, Pompano Pats correctly argues that the lower court lacked authority to rewrite the contract where its provisions were clear and unambiguous. See, e.g., Coastal Fuels Marketing, Inc. v. Leasco Investments, 662 So.2d 375, 376 (Fla. 5th DCA 1995). Accordingly, we reverse that portion of the final judgment finding that Pompano Pats breached the contract.
Bourgett moves for attorneys fees and costs pursuant to the contract, which provides, "Dealer shall reimburse [Bourgett] for its costs and expenses, including reasonable attorney's fees, incurred in the exercise of [Bourgett]'s rights and remedies under this Dealer Agreement." In Zaremba Florida Co. v. Klinger, 550 So.2d 1131 (Fla. 3d DCA 1989), the court held that the party requesting appellate attorney's fees pursuant to a prevailing party statute was only entitled to fees generated in connection with one out of nine counts because that was the only count on which it prevailed. Id. at 1132. In the instant appeal, Bourgett prevails on Pompano Pats' two counts for breach of contract and violations of Chapter 320. It loses on its own count for breach of contract. Accordingly, the trial court on remand should determine a reasonable time allowance for the counts on which Bourgett prevailed. "The inquiry is for a fair allowance assuming the case had only involved the single issue. We do not assume that all of the counts were of equal difficulty. Moreover, some of counsel's work may be fairly attributable *702 to all counts, or multiple counts. Such time may be included, so long as it is fairly attributable to the count on which plaintiffs prevailed." Id. at 1132.
AFFIRMED IN PART; REVERSED IN PART; REMANDED.
SAWAYA, C.J., and THOMPSON, J., concur.