[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-13132
Non-Argument Calendar
_____

D.C. Docket No. 3:13-cv-00826-TJC-MCR

TYRENE SCOTT,

Plaintiff-Appellant,

versus

CARRIER CORPORATION,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(October 27, 2016)

Before MARCUS, JORDAN, and JULIE CARNES, Circuit Judges.

PER CURIAM:

In 1993, Tyrene Scott enrolled his air-conditioner company, Scott Air

Technology, Inc. (as a dealer), and himself (as a participant) in Carrier

Corporation's Income Extension Program ("the program"), which incentivizes

dealers to sell Carrier products by giving participants the opportunity to earn deferred retirement income for each qualifying Carrier product the dealer sells. In April 2011, Scott, then age 63, demanded payment of the benefits he had accrued, pursuant to the program's early-retirement option. Carrier denied Scott's demand for payment, maintaining that, when Scott Air Technology ceased operations in 2008, Scott forfeited the benefits he had accrued under the program. Scott sued Carrier in federal district court, claiming that Carrier breached the 1993 enrollment agreement by denying his demand for payment of his accrued benefits. The district court granted summary judgment in favor of Carrier. On appeal, Scott argues that: (1) the district court erred in concluding that Carrier terminated and divested Scott of his vested retirement benefits before his request for payment in early retirement; (2) due process and the implied covenant of good faith and fair dealing required some form of notice to Scott that his vested retirement benefits were subject to forfeiture; and (3) the court should have drawn an adverse inference from Carrier's failure to provide proper and meaningful responses to Scott's discovery request. After careful review, we affirm.

We review a district court's grant of summary judgment de novo, viewing the material and drawing all reasonable factual inferences in favor of the nonmoving party. Stephens v. Mid-Continent Cas. Co., 749 F.3d 1318, 1321 (11th Cir. 2014). Summary judgment is appropriate if "there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

The parties agree that, in this diversity case, Florida law governs the interpretation of the enrollment agreement, which was executed in Florida. See Shaps v. Provident Life & Accident Ins. Co., 317 F.3d 1326, 1329-30 (11th Cir. 2003). "Under Florida law, courts must give effect to the plain language of contracts when that language is clear and unambiguous." Arriaga v. Fla. Pac. Farms, LLC, 305 F.3d 1228, 1246 (11th Cir. 2002) (citing Hamilton Constr. Co. v. Bd. of Pub. Instruction, 65 So. 2d 729, 731 (Fla. 1953)). "Absent an ambiguity, interpretation of a contract is a question of law to be decided by the court." Travelers Indem. Co. v. Hutson, 847 So. 2d 1113, 1114 (Fla. 1st Dist. Ct. App. 2003). "Whether an ambiguity exists in a contract is also a question of law." Id.

The district court concluded that, under the unambiguous language of the enrollment agreement, Scott Air Technology became ineligible to participate in the Income Extension Program when it ceased operations in 2008. The district court relied on Section 2.0 of the enrollment agreement, titled "Eligibility," which provided: "To be eligible to participate as a Participant or sponsor a person to be the Participant under the Program, the Dealer . . . shall with respect to subsections 2.1 through 2.3 below for each Program Year meet the criteria set forth therein. . . ." Sections 2.1 through 2.3 required the Dealer to:

2.1    select [Carrier] as its favored supplier with respect to its need for heating, ventilating, and air-conditioning equipment and parts;

2.2    advertise and identify its business exclusively with its brand of [Carrier's] equipment and parts; [and]

2.3    demonstrate to [Carrier's] satisfaction its commitment to the continuous growth and development of its brand of [Carrier's] equipment and parts, by its level of purchases of such brand of equipment and parts, by monitoring and improving customer satisfaction, by training employees, and by conducting effective advertising programs for such brand.

The district court concluded that Scott Air Technology necessarily became ineligible when it ceased operations because it could no longer select Carrier as its favored supplier, advertise Carrier products, or demonstrate a commitment to the continuous growth and development of the Carrier brand.

The district court then looked to Section 5.0 of the enrollment agreement, titled "Vesting," which provided:

> The Participant will become vested in the benefits credited to the Participant under the Program at such time as the Dealer purchases the Minimum Purchase Level for a total of five years, which such five years need not be consecutive, provided that the Dealer shall, . . . at all times, otherwise remain eligible as specified in this Agreement. If at any time before the commencement of payments, the Dealer becomes ineligible, all credited benefits, including those as would otherwise be vested above, shall, notwithstanding anything else in this Agreement, be subject to divestment and forfeiture and use by [Carrier] as [Carrier] sees fit in its sole discretion. Benefits that are credited and which are vested and not subject to forfeiture shall become deferred income to the Participant.

4

The district court noted that undisputed record evidence showed that Scott Air Technology had satisfied the minimum purchase level for 5 years, and thus, Scott's benefits had vested. However, because Scott Air Technology had become ineligible to participate in the Income Extension Program in 2008 -- before the commencement of payments to Scott -- Scott's vested benefits did not become "deferred income" to which he was entitled. The court noted that Section 5.0 unambiguously stated that, if the participant's registered dealer became ineligible, "all credited benefits, including those as would otherwise be vested," would become "subject to divestment and forfeiture," and only "[b]enefits that are credited and which are vested and <u>not subject to forfeiture</u>" qualified as deferred income to which the participant was entitled. (Emphasis added).

First, we are unpersuaded by Scott's claim that the district court erred in concluding that a closed business is ineligible to participate in the Income Extension Program. He contends that the "clear import" of the eligibility requirements in Section 2.0 is to keep the dealer from switching allegiances to another company, which does not occur when a business no longer operates. However, Scott's argument ignores the unambiguous language of Section 2.0, which provides that, to remain eligible, "for each Program Year" the dealer must meet the requirements in Sections 2.1-2.3. These sections -- which broadly require dealers to select and promote Carrier equipment -- provide no exception for closed

5

businesses.  Indeed, in his deposition testimony, Scott acknowledged that Scott Air Technology did not meet the specified requirements found in Sections 2.1-2.3 after it ceased operations in 2008.

Nor are we convinced by Scott's argument that even if Scott Air Technology became ineligible in 2008 and his accrued benefits were "subject to forfeiture" pursuant to Section 5.0, they had not actually been forfeited.  He says they had not been forfeited because Carrier took no action to effect a forfeiture.  But whether Carrier took any action to effect a forfeiture is irrelevant -- the enrollment agreement unambiguously provides that deferred income includes only "[b]enefits that are credited and which are vested and not subject to forfeiture."  (Emphasis added).  Thus, the district court did not err in concluding that Scott had forfeited his accrued benefits.

We also reject Scott's claim that Carrier breached due process or the implied duty of good faith and fair dealing by failing to notify him that, when Scott Air Technology ceased operations, he would lose the right to collect his accrued benefits as deferred income.  Because Scott did not raise this argument in the district court, he has failed to preserve it for appellate review, and we decline to consider it here.  See Access Now, Inc. v. Sw. Airlines, Co., 385 F.3d 1324, 1331 (11th Cir. 2004) (noting that, generally, "an issue not raised in the district court and raised for the first time in an appeal will not be considered by this court")

6

(quotations omitted).[1]  We note, moreover, that the contract language notified Scott that accrued benefits, even if vested, would not become deferred income if his registered dealer became ineligible "at any time before the commencement of payments."  Thus, he has failed to point to any provision of the contract that could form the basis of a duty-of-good-faith claim.  See Hosp. Corp. of Am. v. Fla. Med. Ctr., Inc., 710 So. 2d 573, 575 (Fla. 4th Dist. Ct. App. 1998) ("[A] duty of good faith must relate to the performance of an express term of the contract and is not an abstract and independent term of a contract which may be asserted as a source of breach when all other terms have been performed pursuant to the contract requirements.").

Finally, in his principal brief on appeal, Scott argues that the district court should have drawn an adverse inference from Carrier's failure to comply with a discovery request.  In particular, Scott requested Carrier to produce records for other participants whose benefits had vested and whose registered dealers ceased operations before the participants reached retirement age.  In his reply brief, Scott concedes that the district court was under no obligation to draw such an inference.  Instead, he asks us to take note that Carrier's records on this issue would have been probative evidence about whether the closure of a participant's registered dealer

---

[1] In the district court, Scott argued that Carrier's failure to notify him violated his due process rights under the Fourteenth Amendment.  Scott also raised a due process argument in his principal appellate brief, but, in his reply brief, he concedes that the Fourteenth Amendment does not apply to Carrier, which is a non-state actor.

results in the automatic forfeiture of vested benefits, or whether the forfeiture is within Carrier's discretion.

However, it is well-established in Florida that "if a contract provision is 'clear and unambiguous,' a court may not consider extrinsic or 'parol' evidence to change the plain meaning set forth in the contract." See, e.g., Jenkins v. Eckerd Corp., 913 So. 2d 43, 52 (Fla. 1st Dist. App. 2005). Thus, it would be inappropriate for us to consider extrinsic evidence -- such as the potential content of Carrier's records -- in order to interpret the enrollment agreement where, as here, the agreement itself is unambiguous. Because Scott has shown no error by the district court, its grant of summary judgment for Carrier is affirmed.

**AFFIRMED.**