**TRACFONE WIRELESS, INC., Plaintiff,**

v.

**SIMPLY WIRELESS, INC., a Virginia corporation, d/b/a Shopcelldeals, and Simply Wireless of Miami, Inc., a Florida corporation, Defendants.**

**Case Number: 15–24565–CIV–MORENO**

United States District Court, S.D. Florida.

Signed 08/29/2017

James Blaker Baldinger, Carlton Fields PA, West Palm Beach, FL, Matthew E Kohen, Aaron Stenzler Weiss, Carlton Fields Jorden Burt, P.A., Miami, FL, for Plaintiff.

Rachel Kate Beige, Barry Adam Postman, Joseph Francisco Valdivia, Todd Richard Dobry, Cole, Scott, Kissane, P.A., West Palm Beach, FL, Sean Patrick Roche, Cameron/McEvoy, PLLC, Fairfax, VA, Mark Francis Raymond, Patricia Maria Baloyra, Broad & Cassel, Miami, FL, for Defendants.

### ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

FEDERICO A. MORENO, UNITED STATES DISTRICT JUDGE

THE MATTER was referred to the Honorable William C. Turnoff, United States Magistrate Judge, for a Report and Recommendation on Defendants' Motion to Dismiss, filed on **March 10, 2017**. The Magistrate Judge filed a Report and Recommendation (**D.E. 147**) on **July 7, 2017**.

The Court has reviewed the entire file and record. The Court has made a *de novo* review of the issues that the objections to the Magistrate Judge's Report and Recommendation present, and being otherwise fully advised in the premises, it is

**ADJUDGED** that United States Magistrate Judge William C. Turnoff's Report and Recommendation is **AFFIRMED** and **ADOPTED**. Accordingly, it is

**ADJUDGED** that the motion to dismiss is GRANTED in part and DENIED in part as set forth in the Report and Recommendation. Plaintiff may file an Amended Complaint by no later than **September 12, 2017** and Defendants shall file an Answer by no later than **September 26, 2017**.

Consistent with this Court's prior orders, the Magistrate Judge is recommending denying the motion to dismiss as to counts one through five and seven. He recommends granting as to count six, a claim for breach of the implied covenant of good faith and fair dealing, and the Plaintiff has not objected to this recommendation.

Defendants object to the recommendation that the Court deny the motion to dismiss the unjust enrichment and implied contract claims. Defendants' objections are mainly premised on the existence of an express contract between the parties in 2007. Because there is an express contract, Defendants argue the unjust enrichment and implied contract claims are not viable. Plaintiff argues that these two claims actually fall outside the agreement's scope and the Magistrate Judge agreed with that Plaintiff dismissal of these claims was not warranted.

This Court agrees that although Plaintiff may ultimately not be able to recover on multiple theories, it can plead them in the alternative. See Savage v. Secure First Credit Union, No. 15-12704, 2016 WL

2997171, at *1 (S.D. Fla. May 25, 2016) (stating that Rule 8(d) permits the pleading of alternative and inconsistent claims). Accordingly, the Court overrules the Defendants' objection on the unjust enrichment and implied contract claims.

DONE AND ORDERED in Chambers at Miami, Florida, this 29th August 2017.

## REPORT AND RECOMMENDATION

WILLIAM C. TURNOFF, UNITED STATES MAGISTRATE JUDGE

**THIS CAUSE** is before the Court upon Defendants Simply Wireless, Inc., and Mobile Now, Inc.'s, Motion to Dismiss the Third Amended Complaint (**ECF No. 110**), and an Order of Referral entered by the Honorable Federico A. Moreno. (**ECF No. 121**). A hearing took place before the undersigned on June 13, 2016. (**ECF No. 137**). Upon review of the Motion (**ECF No. 110**), the Response (**ECF No. 114**), the Reply (**ECF No. 119**), the court file, hearing argument from counsel, and being otherwise duly advised in the premises, the undersigned makes the following findings.

### Background

The operative pleading, the Third Amended Complaint ("TAC") was filed on February 17, 2017. (**ECF No. 109**). The allegations in the TAC are as follows. **Count 1**: unauthorized access to a protected computer in violation of the Computer Fraud and Abuse Act (hereafter "CFAA"), 18 U.S.C. § 1030(a)(5) (c); **Count 2**: unauthorized access to a protected computer with the intent to defraud in violation of 18 U.S.C. § 1030(a)(4) of the CFAA; **Count 3**: knowingly trafficking in password information in violation of 18 U.S.C. § 1030(a)(6) of the CFAA; **Count 4**: unjust enrichment (a/k/a claim for contract implied at law) in violation of Florida's common law; **Count 5**: breach of implied-in-fact agreement; **Count 6**: breach of implied covenant of good faith and fair dealing in violation of Florida's common law; and **Count 7**: accounting.[1]

The allegations in the TAC revolve around the parties' long standing business relationship and, in simplified terms, a 2007 contract for the sale of certain TracFone cellular phones and promotional airtime cards. The details of same shall be summarized below.

### November 11, 2007 Agreement

In late 2006, the parties began negotiating a contract for the sale of phones by TracFone to Simply. The phones were to be resold on the Home Shopping Network (HSN) and similar platforms. (**ECF No. 109 at 5**). The negotiations were both verbal and *via* email. Id. In essence, the parties agreed that TracFone would create a "bundle" that included the phone and a promotional airtime card[2] (PIN) worth $15.00. Id. In this connection, TracFone would sell the phones to Simply (including the PINs) for $56.00 each. Id. The PINS would be provided at no additional cost. Id. In TracFone's view, providing these bundles would result in an expansion of its customer base. Id.

---

1. In this count, TracFone asks that Simply be compelled to provide an accounting of: (i) how many promotional PINs it sold outside of the bundles; (ii) how many TracFone products Simply maintains in its possession; and (iii) the amount of sales generated from the resale of promotional PINs. (ECF No. 109).

2. TracFone's prepaid services are used by consumers that wish to avoid commitments to long-term contracts. TracFone allows customers to purchase a specific amount of air time in order to make calls. Time can be added as needed. Air time cards are available for purchase at various retailers. Aurelio Locsin, What is a TracFone?, It Still Works, June 21, 2017, http://itstillworks.com/tracfone-5042778.html.

The parties' agreement was confirmed in writing on November 11, 2007 ("the 07' Agreement"). Id. at 6.

### Expansion of the Business Relationship

Following the 07' Agreement, the parties expanded their dealings to include the sale of additional phone models and PINs [3] on new platforms, such as Ebay. Id. at 7. In furtherance of same, they communicated via email, and exchanged numerous invoices and purchase orders. Id. at 7–8; see also (ECF No. 109, Exhibit D and C). Throughout the expansion, TracFone continued to provide Simply with the phones and PINs for bundling described in the 07' agreement. Id. at 8.

### Simply's Alleged Misconduct

The 07' agreement appears to be silent as to whether *all* promotional PINs were to be sold as part of a bundle. Nevertheless, TracFone alleges that Simply understood, based on the parties' dealings, that Tracfone provided the PINs to them at no cost, so that the PINs could be sold as a bundle. Id. at 10. Despite the parties' shared understanding, TracFone claims that Simply sold a significant number of the promotional PINs separately for 100% profit—generating over seven million dollars. Id. at 11. Specifically, TracFone alleges that over 173,000, more than 20% of the promotional PINs, were used by customers that never purchased a bundle. Id. Because of this, TracFone claims to have lost the anticipated marketing benefits and profits. Id. TracFone further alleges that Simply's conduct resulted in its customers receiving PINs that malfunctioned, leaving the customers dissatisfied with Tracfone-branded products.

### Termination

The parties met on August 5, 2015 to address these issues. Id. at 15. Following the meeting, they exchanged emails confirming each side's understanding of what was discussed. Id. Simply confirmed its understanding that "the $0 (Zero) cost PINs were to be used exclusively to bundle phones with the airtime and [were] not sold individually." (ECF No. 109 at 15, Exhibit I). Shortly thereafter, on October 27, 2015, TracFone served Simply with a ninety (90) day written notice of its intention to terminate the parties' business relationship. (ECF No. 109, Exhibit J).

### Prior Motion to Dismiss

Simply filed a Motion to Dismiss the Second Amended Complaint ("SAC") on April 22, 2016. (ECF No. 51). Judge Moreno referred the Motion to his then-paired magistrate, Magistrate Judge John J. O'Sullivan. (ECF No. 43). The SAC contained allegations very similar to those raised in the currently operative TAC.

By way of summary, the SAC alleged: unauthorized access to a protected computer in violation of the CFAA (Count 1); unauthorized access to a protected computer with intent to defraud in violation of the CFAA (Count 2); knowingly trafficking in password information in violation of the CFAA (Count 3); and unjust enrichment (a/k/a claim for contract implied at law) (Count 4). (ECF No. 33). Additionally, the SAC alleged: fraud in the inducement of the Transition Agreement [4] (Count 5); breach of Transition Agreement (Count 6); and unjust enrichment (Count 7). Id. The SAC also included allegations of federal trademark infringement in violation of 15 U.S.C. § 1114, Section 32 of the Lanham Act (Count 8); federal

---

3. Under the expansion, certain phones and PINS were sold to Simply at wholesale prices. Simply was authorized to resell these for a profit. Id. at 9.

4. The Transition agreement is not discussed in the TAC.

false designation of origin and unfair competition (**Count 9**); breach of the 07' Agreement (**Count 10**); breach of implied covenant of good faith and fair dealing (**Count 11**); and accounting (**Count 12**). Id. Upon review, Judge O'Sullivan recommended that the motion be granted in part and denied in part.

Specifically, he recommended that the Motion be denied as to counts 1, 2, and 3. (ECF No. 79 at 19). He reasoned that, although the SAC did not allege that Simply had directly accessed TracFone's computers, direct access to a computer is not required in order for a defendant to be held liable under the CFAA, when the defendant assisted another individual in accessing the protected computer system. Id. at 16. He found, among other things, that the SAC alleged that Simply knew that the sale of the unbundled PINs was not permitted. Id. He likewise found that TracFone had properly pled the elements of knowingly trafficking in password information in violation of the CFAA. Id. In this connection, he found that the PINs constituted password information under the CFAA, and that Simply sold same directly to consumers for profit, in violation of the parties' understanding. Id. In other words, accepting the allegations as true, the alleged conduct permitted Simply's customers to wrongfully access TracFone's nationwide computer system. Id.

In addition, Judge O'Sullivan recommended that Counts 5 through 7 be submitted to arbitration, and that Simply's Motion to Dismiss these claims should be denied as moot, because Counts 5 through 7 all fell under the broad arbitration provision of the transition agreement. Id. at 14, 20. Judge O'Sullivan also recommended that Counts 8 and 9 be dismissed without prejudice. Id. at 22. He reasoned that the SAC did not plead facts sufficient to overcome the First Sale Doctrine, and the SAC's conclusory allegations did not meet the standard required by Iqbal and Twombly. Id.

With respect to Counts 10 (breach of contract) and 11 (breach of implied covenant of good faith/fair dealing) Judge O'Sullivan recommended dismissal without prejudice, because these counts failed to cite to any provision in the 07' Agreement that *specifically* prohibits Simply from selling the PINs individually. Id. at 23. As to Count 12 (accounting), he recommended that the motion be denied, because he found that the SAC sufficiently alleged a complex transaction between the parties and provided an explanation as to why a legal remedy would be inadequate. Id. at 24. For these reasons, he concluded that TracFone had properly pled a cause of action for accounting. Id.

On January 26, 2017, Judge Moreno entered an Order adopting the recommendations. (ECF No. 101). In doing so, the judge denied the motion to compel arbitration on the unjust enrichment claim. Id. at 2.

## Comparison of SAC and TAC

By way of summary, a comparison of the SAC and the TAC reveals the following differences. First, Simply Wireless Miami was dropped as a defendant. Second, all claims under the Lanham Act were dropped. The claims relating to a December 2015 agreement, and the breach of contract claim regarding the 07' agreement have likewise been dropped. See (ECF No. 109). However, the TAC realleges, without any material alterations, the claims for violation of the CFAA, unjust enrichment, and for accounting. As noted above, these claims were already found to be sufficiently pled in the SAC. Id. The TAC also raises a new claim for breach of an implied-in-fact agreement based on the parties' discussions before the 07' agreement, and the parties' course of conduct follow-

ing the same (Count 5). Id. Lastly, the TAC alleges a revised claim for breach of the implied covenant of good faith and fair dealing (Count 6). Id.

## Analysis

In reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court's analysis is generally limited to the four corners of the complaint and its attached exhibits. See Grossman v. Nationsbank, 225 F.3d 1228, 1231 (11th Cir. 2000). The Court should accept the well-pled facts as true and view the complaint in the light most favorable to the non-moving party. Caravello v. Am. Airlines, Inc., 315 F.Supp.2d 1346, 1348 (S.D. Fla. 2004) (citing United States v. Pemco Aeroplex, Inc., 195 F.3d 1234, 1236 (11th Cir. 1999)). In this regard, the complaint must contain factual allegations which "raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Conclusory statements are not presumed to be true. Id.

A complaint need not provide detailed factual allegations to survive a 12(b)(6) motion to dismiss. However, it must give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. Claybar v. Huffman, 54 F.Supp.3d 1284, 1287 (S.D. Ala. 2014) (quoting Randall v. Scott, 610 F.3d 701, 705 (11th Cir. 2010)). At this stage, the issue to be decided is not whether the plaintiff will ultimately prevail, but "whether the claimant is entitled to offer evidence to support [his/her] claims." Little v. City of North Miami, 805 F.2d 962, 965 (11th Cir. 1986) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)).

Upon careful review of the Motion, the Response, the Reply, the TAC, the SAC,

the applicable law, and this Court's prior rulings, the undersigned makes the following findings.

## Count 1: Unauthorized Access to a Protected Computer (CFAA)

Simply argues that dismissal is appropriate because it had, at all times, authorization to access TracFone's computers. (ECF No. 109, Exhibit D). Simply also argues that the TAC fails to allege "losses" and "damages" as required by § 1030(a)(5)(c) of the CFAA. (ECF No. 110 at 22). Simply's arguments fail to persuade.

In order to state a claim under 18 U.S.C. § 1030(a)(5)(c) of the CFAA, a plaintiff must allege that Defendant "intentionally accessed a 'protected computer.[5]' without authorization, and as a result of such conduct, caused damage and loss." 18 U.S.C. § 1030(a)(5)(c).

As a general matter, the CFAA was primarily intended to punish criminal violations, e.g. computer hacking. See Dresser–Rand Co. v. Jones, 957 F.Supp.2d 610, 613 (E.D. Pa. 2013). However, the statute also recognizes private causes of action by individuals damaged by computer fraud. In other words, "any person who suffers damage or loss by reason of a violation of [the CFAA] may maintain a civil action against the violator [in order] to obtain compensatory damages and injunctive relief or other equitable relief." In re AOL, Inc. Version 5.0 Software Litig., 168 F.Supp.2d 1359, 1368 (S.D. Fla. 2001) (citing 18 U.S.C. § 1030(g)).

Here, the TAC sufficiently alleges that Simply violated § 1030(a)(5)(c) of the CFAA, by knowingly/intentionally selling the promotional PINs outside of the bun-

---

**5.** The term "protected computer" means a "computer which is used in or affects interstate or foreign commerce or communication, including a computer located outside the United States that is used in a manner that affects interstate or foreign commerce or communication of the United States." 18 U.S.C. § 1030(e)(2)(B).

dles—resulting in customers entering TracFone's computer network without authorization. Stated differently, although Simply may have had a basic authorization to sell the promotional PINs within bundles, the allegations suggest that it exceeded its authority. In this connection, the Eleventh Circuit has found that when a user's access to a computer is limited to a particular purpose, here selling the promotional PINs in a bundle, access to that computer for another reason/purpose exceeds that user's authorization. United States v. Rodriguez, 628 F.3d 1258, 1263 (11th Cir. 2010).

In this connection, TracFone sufficiently alleges that it sustained losses by claiming that it lost new customers, long-terms customers, and future revenues, as well as its reputation and. Id.; See 18 U.S.C. § 1030(e)(11).[6] For example, TracFone claims to have received numerous negative online comments made by purchasers of the unbundled promotional PINs. (ECF No. 109 at 12–15). Because it had no record of who purchased, and subsequently attempted to use, the unbundled PINs, it had no ability to monitor or assist with these issues. Id.; See In re America Online, Inc., 168 F.Supp.2d 1359, 1380 (S.D. Fla. 2001) (denying motion to dismiss and finding that the loss of reputation and goodwill constituted damages under 18 U.S.C. § 1030(a)(5)) (citing America Online, Inc. v. LCGM, Inc., 46 F.Supp.2d 444, 450 (E.D. Va. 1998)). Notably, this Court has already denied the Motion on this count as to the SAC. See (ECF No. 101). For these reasons, the undersigned **RESPECTFULLY RECOMMENDS** that the Motion be denied as to Count 1.

## Count 2: Unauthorized Access to a Protected Computer with the Intent to Defraud (CFAA)

Simply again argues that dismissal is appropriate because it had, at all times, authorization to access TracFone's computers. (ECF No. 109, Exhibit D). Simply further argues that TracFone fails to allege that it obtained "anything of value" as required by the CFAA. (ECF No. 110 at 25). Again, these arguments fail to persuade.

■ Plaintiffs seeking relief under § 1030(a)(4) of the CFAA must allege that Defendant: (1) accessed a protected computer; (2) has done so without authorization or by exceeding its authorization; (3) has done so "knowingly" and with "intent to defraud"; and that, (4) as a result has "further[ed] the intended fraud and [has thereby] obtained [something] of value." 18 U.S.C. § 1030(a)(4). Here, the TAC sufficiently alleges that Simply knowingly sold the promotional PINs outside of the bundles, resulting in customers gaining unauthorized access to TracFone's computer network. These actions, as indicated above: tarnished TracFone's reputation; resulted in its loss of long-term customers and future profits; and allowed Simply to profit millions of dollars.

Again, although Simply may have had a basic authorization to sell the promotional PINs, within bundles, the allegations suggest that it exceeded its authority when it sold the promotional PINs individually, which allowed customers to access TracFone's system, in violation of the CFAA. (ECF No. 109). See Rodriguez, 628 F.3d at 1263. In sum, TracFone claims that Simply has profited millions of dollars

---

6. "Loss" is defined as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." 18 U.S.C. § 1030(e)(11).

from the unauthorized selling of the unbundled promotional PINs that it obtained free of charge. See (ECF. No. 109 at 11, 16). For these reasons, as well as this Court's previous denial of Simply's Motion as to this count in the SAC (ECF No. 101), the undersigned **RESPECTFULLY RECOMMENDS** that the Motion be denied as to Count 2.

## Count 3: Knowingly Trafficking in Password Information in Violation of 18 U.S.C. § 1030(a)(6) of the CFAA

■ Here, Simply claims that because TracFone provided it with the PINs, said PINs cannot be considered as being trafficked, as required by the CFAA. Id. at 26. Simply further argues that the sole purpose of the PINs was to allow customers to access TracFone's computer system. Id. Therefore, in its view, regardless of how the PINs were sold, such activity cannot constitute trafficking. Id. Again, the undersigned is not persuaded.

In order to bring a claim under § 1030(a)(6), a plaintiff must allege that: "(1) the Defendant knowingly; (2) trafficked in; (3) a computer password; (4) in a manner that affects interstate commerce." T–Mobile USA, Inc. v. Terry, 862 F.Supp.2d 1121, 1131 (W.D. Wash. 2012) (citing 18 U.S.C. § 1030(a)(6)). Here, the TAC properly alleges that Simply trafficked the promotional PINs to customers. In other words, the allegation is that Simply knowingly sold the promotional PINs, a computer password, without authorization, to customers for a profit. These customers then, in turn, used the unauthorized PINs to gain access to TracFone's computer system. (ECF No. 109 at 23–26). The TAC further alleges that this unauthorized selling of PINs affected TracFone's nationwide computer system. (ECF No. 109 at 23–26); see also T–Mobile USA, Inc, 862 F.Supp.2d at 1131 (granting summary judgment for the plaintiff because the defendant sold counterfeit and illegally-activated SIM cards to consumers giving them access to the plaintiffs computer system, which constituted trafficking). For the reasons stated above, and consistent with this Court's prior denial of the Motion as to this count in the TAC, it is **RESPECTFULLY RECOMMENDED** that the Motion be **DENIED** as to Count 3.

## Count 4: Unjust Enrichment

Here, Simply argues that TracFone received payment for the PINs, as shown by the 07' Agreement, wherein the value of the PINs was listed as $15.00. (ECF No. 110 at 16). Additionally, Simply argues that under Florida law, equitable claims for relief, such as unjust enrichment, are not available when the face of the Complaint shows that an adequate remedy at law exists. (ECF No. 110 at 16). The undersigned disagrees.

■ Under Florida law, in order to state a claim for unjust enrichment, a plaintiff must show that: "(1) he/she has conferred a benefit on the defendant, who has knowledge thereof; (2) defendant voluntarily accepts and retains the benefit conferred; and that (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiff." Hillman Const. Corp. v. Wainer, 636 So.2d 576, 577 (Fla. 4th DCA 1994). Although "[i]t is generally true that equitable remedies are not available under Florida law when adequate legal remedies exist ... that rule does not apply to unjust enrichment claims." Marty v. Anheuser–Busch Cos., LLC, 43 F.Supp.3d 1333, 1349 (S.D. Fla. 2014) (O'Sullivan, M.J.) (quoting In re Horizon Organic Milk, 955 F.Supp.2d 1311, 1337 (S.D. Fla. 2013) (Lenard, J.)). In other words, TracFone's unjust enrichment claim is not barred by the mere existence of adequate legal remedies. See Marty, 43 F.Supp.3d at 1349. Unjust enrichment can be pled as an alternative to any other

remedy under an express agreement. See Fed. R. Civ. P. 8(a)(3); Muzuco v. Re$ubmitIt, LLC, 2012 WL 3242013, at *8, 2012 U.S. Dist. LEXIS 110373, at *20–22 (S.D. Fla. Aug. 7, 2012) (holding that although the plaintiff cannot recover under both legal and equitable theories, the plaintiff's unjust enrichment claim will not be dismissed at the motion stage).

Here, the TAC sufficiently alleges a claim for unjust enrichment. Specifically, TracFone alleges that although the value of the PINs is marked as $15.00, Simply was not charged for them. (**ECF No. 109, Exhibit A**). In other words, Simply accepted the no cost PINs, and then proceeded to sell them and retain 100% of the profits. See (**ECF No. 109**). Based on these alleged facts, and the applicable law, TracFone has properly stated a claim for unjust enrichment. Consistent with the above, as well as this Court's prior ruling on this same count in the SAC, it is **RESPECTFULLY RECOMMENDED** that the Motion be **DENIED** as to Count 4.

## Count 5: Breach of Implied-in-Fact Agreement

Here, Simply contends that dismissal is appropriate because the implied-in-fact agreement constitutes an unwritten unenforceable restrictive covenant/restraint on trade. (ECF No. 110 at 10). Specifically, Simply argues that the limitation of the sale of unbundled PINs is anti-competitive in nature because the Complaint alleges that TracFone itself would have sold the PINs for profit. (ECF No. 110 at 11). Simply further argues that the claim for breach of an implied-in-fact contract is barred under the parole evidence rule. Id. In its view, the 07' agreement is clear, and the Court cannot rewrite the same to include an omitted provision. Id. at 13. Lastly, Simply argues that the TAC fails to allege that Simply consented to only selling the promotional PINs in bundles.

(ECF No. 110 at 14). The undersigned disagrees.

Under Florida law, a contract implied-in-fact is an enforceable contract. It is based on an implicit promise, one that is inferred in whole, or in part, from the parties' conduct. Tara Prods. v. Hollywood Gadgets, Inc., 2010 WL 1531489, at *5-6, 2010 U.S. Dist. LEXIS 37889, at *15 (S.D. Fla. Apr. 16, 2010) (citing Commerce P'ship 8098 Ltd. P'ship v. Equity Contracting Co., 695 So.2d 383, 386 (Fla. 4th DCA 1997)). Typically, in these contracts, the parties have in fact entered into an agreement, but without sufficient clarity, so a fact finder must examine and interpret their conduct to define their unspoken agreement. Id. (citing Tooltrend, Inc. v. CMT Utensili, SRL, 198 F.3d 802, 806 (11th Cir. 1999)). "An implied contract requires the same elements as an express contract, and differs only in the parties' method of expressing mutual consent." Smith v. Casey, 2014 WL 11878422, at *4 (S.D. Fla. 2014) (quoting Merle Wood & Assocs., Inc. v. Trinity Yachts, LLC, 857 F.Supp.2d 1294, 1304 (S.D. Fla. 2012)).

Here, the TAC alleges that the parties negotiated and agreed that the PINs would *only* be sold in bundles. After the 07' agreement, and consistent with their subsequent dealings, Simply sold the bundled products to HSN customers. Thereafter, Simply is alleged to have improperly resold over 170,000 individual promotional PINs, thereby depriving TracFone of substantial revenue. See generally (**ECF No. 109**). Based on these alleged facts, TracFone has sufficiently alleged that Simply breached an implied-in-fact agreement.

Simply's alternative arguments likewise fail to persuade. First, the implied-in-fact agreement is not a restraint on trade. Rather, it is an agreement between a producer and a distributor. Nothing in the

agreement prevents Simply from selling its own phones, or creating its own telecommunication company. See (**ECF No. 109, Exhibit A**). Secondly, the implied-in-fact agreement is not barred by the parole evidence rule, because TracFone is not attempting to modify the 07' agreement. Lastly, Simply's assertion that it never consented to the terms is a factual dispute that cannot properly be resolved by the Court at this stage in the pleadings. Page v. Postmaster Gen. & Chief Exec. Officer of the United States Postal Serv., 493 Fed. Appx. 994, 995–96 (11th Cir. 2012) (citing to Chappell v. Goltsman, 186 F.2d 215, 218 (5th Cir.1950) ("In adjudicating a motion to dismiss, the district court may not resolve factual disputes.")). Consistent with the above, the undersigned **RESPECTFULLY RECOMMENDS** the Motion be **DENIED** as to Count 5.

## Count 6; Breach of Implied Covenant of Good Faith and Fair Dealing

Simply argues that dismissal is appropriate because TracFone fails to show an express agreement that the promotional PINs could only be sold as part of the bundles in the 07' agreement. (**ECF No. 110 at 17**). Simply also contends that this claim is identical to the previously dismissed claim, and therefore should be dismissed again, this time with prejudice. Id. The undersigned agrees.

 Florida contract law recognizes an implied covenant of good faith and fair dealing in every contract. Burger King Corp. v. Weaver, 169 F.3d 1310, 1315 (11th Cir. 1999); County of Brevard v. Miorelli Eng'g, Inc., 703 So.2d 1049, 1050 (Fla. 1997). However, there are two limitations on claims for breach of the implied covenant: (1) where application of the covenant would contravene the express terms of the agreement; and (2) where there is no accompanying action for breach of an express term of the agreement. Ins. Concepts & Design, Inc. v. Healthplan Servs.,

Inc., 785 So.2d 1232, 1234 (Fla. 4th DCA 2001). Therefore, a claim for breach of the implied covenant of good faith cannot be maintained in the absence of breach of an express contract provision. Burger King Corp., 169 F.3d at 1316 (citing Hospital Corp. of America v. Florida Med. Ctr., Inc., 710 So.2d 573, 575 (Fla. Dist. Ct. App.1998).

 Here, as noted above, the TAC fails to point to any express term which mandates that the promotional PINs could only be sold as part of the bundles. (**ECF No. 109, Exhibit A**); See Regency of Palm Beach, Inc. v. QBE Ins. Corp., No. 08-81442-CIV, 2009 WL 2729954, at *4 (S.D. Fla. Aug. 25, 2009) ("Under Florida law, [a claimant]'s failure to identify an express contractual provision that has been breached dooms its claim for breach of the implied covenant."). Consistent with the above, and this Court's previous ruling, the undersigned **RESPECTFULLY RECOMMENDS** the Motion be **GRANTED** as to Count 6.

## Count 7: Accounting Claim

Here, Simply contends that dismissal is appropriate because TracFone is in possession of all the documents related to this case, and therefore, an accounting is not necessary. (**ECF No. 110 at 28**). Simply also argues that the other claims alleged by TracFone fail to "require, justify, or necessitate a claim for accounting." (**ECF No. 119 at 14**). Lastly, Simply contends that because the contract claims should be dismissed, no allegations of a complex transaction can exist. (**ECF No. 110 at 28**). Again, these arguments fail to persuade.

[15] In order for a party to sufficiently state a claim for an accounting, the party must show either "(1) a sufficiently complicated transaction and an inadequate remedy at law, or (2) the existence of a fiduciary relationship." Zaki Kulaibee Es-

tablishment v. McFliker, 771 F.3d 1301, 1311 (11th Cir. 2014).

Here, as found by Judges O'Sullivan and Moreno, the TAC sufficiently alleges a complicated transaction between the parties. (**ECF No. 109 at 32–33**). These transactions involved hundreds of thousands of various PINs and TracFone devices. Id. Because TracFone is unclear as to how many of the promotional PINs were improperly sold, it is unable to determine how much it is owed. Id.; (**Exhibits C–E**). Therefore, the only way to calculate the damages Simply owes to TracFone is by way of an accounting inquiry. (**ECF No. 114 at 6**). For these reasons, and as per this Court's previous finding, the undersigned **RESPECTFULLY RECOMMENDS** the Motion be **DENIED** as to Count 7.

### Motion to Strike TracFone's Demand for Interest, Consequential Damages, etc.

In the Motion at hand, Simply requests that the Court strike TracFone's request for consequential damages, interest and/or costs, because neither remedy is available under either the 07' agreement, or any other agreement. (**ECF No. 110 at 28**). The undersigned disagrees.

Under 12(f) of the Federal Rules of Civil Procedure, the Court "may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "A motion to strike is a drastic remedy, which is disfavored by the courts." Thompson v. Kindred Nursing Ctrs. E., LLC, 211 F.Supp.2d 1345, 1348 (M.D. Fla.2002) (quoting Augustus v. Bd. of Pub. Instruction of Escambia Cnty., Fla., 306 F.2d 862, 868 (5th Cir.1962)). They are usually "denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties." Id.; see also In re Se. Banking Corp. Sec. & Loan Loss Reserves Li-

tig., 147 F.Supp.2d 1348, 1355 (S.D. Fla. 2001).

Here, nothing in the parties' agreement precludes an award of damages. Further, the damages alleged are allowed under Florida and Federal law. TracFone Wireless, Inc. v. Hernandez, 196 F.Supp.3d 1289, 1302 (S.D. Fla. 2016) ("In Florida, 'a plaintiff is entitled to prejudgment interest as a matter of law."); Allstate Ins. Co. v. Palterovich, 653 F.Supp.2d 1306, 1329 (S.D. Fla. 2009) ("Under Florida law, 'when a verdict liquidates damages on a plaintiff's out-of-pocket pecuniary losses, the plaintiff is entitled to prejudgment interest at the statutory rate from the date of such loss' "); 28 U.S.C. § 1961(a) ("Interest shall be allowed on any money judgment in a civil case recovered in a district court."). Lastly, the CFAA permits the recovery of "any reasonable cost to any victim, including the cost of responding to an offense. . . ." 18 U.S.C § 1030(e)(11).

Consistent with above, it is **RESPECTFULLY RECOMMENDED** that the Motion be **DENIED**.

Accordingly, and consistent with the above, it is hereby **RESPECTFULLY RECOMMENDED** that Defendants' Motion (**ECF No. 110**) be **GRANTED-IN-PART and DENIED-IN-PART**. In the interest of moving this litigation forward, it is **FURTHER RESPECTFULLY RECOMMENDED** that Defendants be directed to file an Answer to the TAC. Pursuant to Local Magistrate Rule 4(b), the parties have fourteen (14) days from service of this Report and Recommendation within which to serve and file written objections, if any, with the Honorable Federico A. Moreno, United States District Judge. Failure to file objections timely shall bar the parties from attacking on appeal the factual findings contained herein. LoConte v. Dugger, 847 F.2d 745 (11th Cir. 1988), cert. denied, 488 U.S. 958, 109

S.Ct. 397, 102 L.Ed.2d 386 (1988); R.T.C. v. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993).

**RESPECTFULLY RECOMMENDED** in Chambers at Miami, Florida on this 7th day of July 2017.